DAVID L. GARVER v. ARTHUR O. BEMENT ET AL.

*Finding of facts by referee—License to use patent right.*

1. A referee is not bound to return the evidence with his finding of facts in his report, and in the absence of such return, or of a settlement of such evidence in the bill of exceptions, the appellate court cannot ascertain whether such finding is supported by *any* evidence or not.

2. Under the contract in this case, either party had the right to terminate the license granted to defendants by notice, which contract did not contemplate the payment of royalty *after* such notice, except such as might be due at the time of its service.

3. The rights of parties claiming under different patents cannot be litigated in the State courts.

Error to Ingham. (Gridley, J.) Argued February 10, 1888. Decided March 2, 1888.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Gurney & Travis,* for appellant.

*Cahill & Ostrander,* for defendants.

MORSE, J. The plaintiff and defendants, on the third day of May, 1879, entered into a contract, wherein the defendants agreed to manufacture and sell the improved harrow

teeth upon which the plaintiff had letters patent bearing date January 22, 1878, in certain states of the Union. They agreed to make 200 harrows on or before October 1, 1879, and each year thereafter to make at least 1,000 of the same, and. to pay a royalty of $1 25 for each harrow of 26 teeth, and the same royalty, proportioned to the number of teeth, for larger or smaller harrows or cultivators of any kind so made under said patent. If they made over 1,250 harrows in any one year after October 1, 1879, the royalty should only be one dollar per harrow. If, at the close of any year ending October 1, the defendants wished to discontinue the manufacture of said harrows, they might do so by notifying the plaintiff when they made their October report.

They also agreed to manufacture and deliver to said plaintiff such harrows, to be sold by him in places where the defendants had not occupied the field, at the rate of $12.37 for 26-tooth harrows, and *pro rata* for other sizes.

They further agreed to make quarterly reports and payments for all harrows manufactured and sold, and make full payments for the same three months after date of said report.

On the twenty-fifth day of October, 1881, the parties. entered into a further agreement, as follows:

" This agreement, made this twenty-fifth day of October, A. D. 1881, between David L. Garver, of the township of Hart, State of Michigan, party of the first part, and E. Bement & Sons, of Lansing, State of Michigan, party of second part, witnesseth, that whereas, letters patent of the United States for an improvement in harrow teeth were granted to the party of the first part, dated January 22, 1878, and whereas, the party of the second part is desirous of manufacturing harrows containing said patented harrow teeth, therefore the parties have agreed as follows:

" *First*. The party of the first part hereby grants, licenses, and empowers the party of the second part to manufacture, subject to the conditions hereinafter named, at their factory at Lansing, and in no other place or places, to the end of the term to which said letters patent were granted, harrows con-

taining said improved harrow teeth, and to sell the same within the United States along with their trade.

"*Second.* The party of the second part agrees to make full and true returns and reports to the party of the first part, under oath, upon the first day of July and the first day of January of each year, of all harrows manufactured by them containing said improved harrow teeth.

"*Third.* The party of the second part agrees to pay to the party of the first part one dollar royalty for every twenty-four-toothed harrow, and thirty-five cents for every one-horse harrow, and seventy-five cents for every eighteen-toothed harrow or cultivator manufactured by them, containing said improved harrow teeth.

"*Fourth.* Upon a failure of the party of the second part to make returns, or to make payment of royalty as herein provided, for thirty days after the days herein named, the party of the first part may terminate this license by serving a written notice upon the party of the second part; but the party of the second part shall not thereby be discharged from any liability to the party of the first part for royalty due at the time of the service of said notice.

"*Fifth.* The party of the second part shall accompany their semi-annual reports with the cash.

"*Sixth.* The party of the second part shall furnish the party of the first part harrows at $13 for eighteen-tooth and $15 for twenty-four-tooth harrows, F. O. B. at Lansing.

"*Seventh.* This contract shall not be construed as giving the party of the second part the exclusive right to sell in any territory whatsoever.

"*Eighth.* The party of the first, or his agent, shall have access to the books of the party of the second part, to verify reports.

"In witness whereof, the parties above named have hereto set their hands the day and year first above written.

"DAVID L. GARVER.
"E. BEMENT & SONS."

The plaintiff sued defendants upon these contracts in the circuit court for the county of Ingham. He averred in his declaration that, immediately after the making of the first contract, the defendants commenced the manufacture and sale of said harrows with such improved teeth, and continued the same until the twenty-fifth day of October, 1881, during

which time they manufactured 10,000 harrows containing 26 teeth, 10,000 containing 24 teeth, and the same number, respectively, containing 20, 11, 9, 7, and 5 teeth, and wholly refused, neglected, and failed to report and pay for the same.

He also avers that, since the making of the last-mentioned contract, the defendants have been and still are engaged in the manufacture of said harrows, and have made and sold in each year, 5,000 harrows each of the number of teeth heretofore mentioned from 24 down to 5, inclusive.

He also adds the common counts in *assumpsit*.

Defendants pleaded the general issue.

The cause was referred to L. D. Johnson, an attorney at Lansing, who took proofs as referee, and made a report of his finding of facts and his conclusions of law thereon to the court. Upon such report judgment was entered for the defendants.

The plaintiff filed the following exceptions to the report of the referee:

"1. Because there is no evidence returned by the referee showing upon what he bases his finding of facts.

"2. Because the evidence that was given in the case does not support nor warrant the conclusions of fact reported by the referee.

"3. Because the referee reports a balance due from the plaintiff to the defendants, while the evidence shows a large balance due to the plaintiff.

"4. Because the statement of the fact reported by the referee is not in accordance with his finding of a balance due to the defendants, he having reported that since the twelfth day of January, 1884, the defendants manufactured 1,000 harrows containing the plaintiff's patent teeth, but with the little improvement upon them, under a patent issued to the defendants.

"5. Because the conclusions of law reported by the referee are not supported by the conclusions of fact reported."

The exceptions were overruled, and the plaintiff brings error.

The first three exceptions we cannot entertain. There was

no bill of exceptions settled of the testimony taken before the referee. He was not bound to return the evidence with his finding of facts in his report, and, as he has not done so, we cannot ascertain whether his finding of facts is supported by any evidence or not.

The referee found that up to the twelfth day of January, 1884, the defendants had overpaid the plaintiff $6.55 upon the harrows manufactured and sold under the two contracts; that on January 12, 1884, the defendants gave notice in writing to the plaintiff of discontinuance of the manufacture and sale of the harrows by them under the contracts, and have ever since denied the plaintiff royalties on harrows manufactured and sold after that date, and disclaimed any rights and privileges under and by virtue of the license in said contract mentioned.

He also found as follows:

"4. That since January 12, 1884, the defendants have manufactured and sold at least 1,000 harrows with improved spring harrow teeth, having the same combination and design as the said 'Garver patented improved harrow tooth,' but containing some improvements, and being differently adjusted to the harrow frame, and upon which they claim patent-rights and hold letters patent from the United States government, issued on the thirty-first day of May, 1882, yet being the same in all respects as the improved spring harrow teeth used by them for some months prior to January 12, 1884, upon which they reported and paid to the plaintiff royalties under said second contract."

It is claimed by the counsel for plaintiff that, under this fourth finding of fact, it appears that the defendants, since the giving of said notice, have sold at least 1,000 harrows for which they should account to him under the last contract. The counsel contend that the notice is no defense whatever against the payment of the royalties provided for by the contract.

The conclusion of law by the referee was that the defendants had a legal right at any time to discontinue the manu-

facture of harrows under the second contract, and to release the plaintiff from the license therein given them to use the improved tooth, and renounce all privileges to themselves thereunder; that said notice, and the refusal to account further for royalties, constituted such release, and said license ceased to be a protection to the defendants as against the plaintiff in the use of said patent tooth; therefore the defendants are not liable to the plaintiff in this suit for royalties on harrows manufactured by them since January 12, 1884.

The question, therefore, raised on this record, and the only one we can determine, is, does the finding of facts support this conclusion of law and the judgment entered upon it?

The counsel for defendants insist that the contract of October 25, 1881, was a bare license to the defendants to use the plaintiff's patent.

The plaintiffs' counsel also argue that it was simply a license from plaintiff to manufacture, and an agreement on defendants' part to pay certain royalties upon such as they did manufacture.

The counsel for defendants claim that they could, by notice, relinquish this license, and the protection it afforded them, and thereafter occupy the same position towards the plaintiff as if no contract had ever existed between them. They argue that, if the plaintiff has a valid patent which defendants are infringing or using without license from him, he has a right to proceed against them in a proper jurisdiction, but that the contract is ended, and that the State courts cannot try titles to the invention now being used by defendants, as they claim, under their patent.

On the contrary, the claim of the plaintiff is that the contract provided that, whenever during the life of the patent the defendants manufactured these harrows with these teeth, they should pay certain royalties; that this was the essence of the contract, and the defendants cannot, after making it, have an option as to whether they will comply with the agree-

ment or not, although, after such notice was given by defendants, the license ceased to be a protection to defendants at the option of the plaintiff.

We think that either party had the right to terminate the license, under certain circumstances,—the defendants by written notice, and the plaintiff by the same notice in case there was a failure on defendants' part to make returns or payments of royalty according to the terms of the contract; and that the agreement did not contemplate the payment of royalty after such notice, save that which might be due at the time of the service of the notice.

The defendants claim to be selling under a patent that protects them, and the plaintiff claims that they are using his invention, and should pay for it. This involves a question that cannot be litigated in the courts of this State.

We find no error in the record, and the judgment of the circuit court must be affirmed, with costs.

SHERWOOD, C. J., CAMPBELL and LONG, JJ., concurred. CHAMPLIN, J., did not sit.